on behalf of Mr. Diaz. Now, we have raised nine issues on appeal, and today I would like to focus on the co-conspirator statements issue, the expert opinion testimony, and the jury instructions issues, if time permits, beginning first with the co-conspirator statements. We've identified four areas of concern for this court, referred to as the tax money hearsay, the methamphetamine hearsay, the roll call hearsay, and the murder plot hearsay. The government has conceded some error with respect to the methamphetamine hearsay. However, all of the statements that were admitted under the co-conspirator statements exception did not meet the requirement that those statements were in the furtherance of the conspiracy. And so I'll address them one by one to begin. With respect to the tax money hearsay, Virginia Gill told, according to David Navarro, the government's star witness, that a couple of times that Diaz was taxing for her husband, Juan Gill. Now, the government's justification for the admittance of that hearsay was that it was a vital update on the status of the conspiracy and maintained cohesiveness among its members. But Navarro didn't testify that that was indeed the case. He didn't testify that the tax money hearsay was an update on the status of the conspiracy. He didn't say that he needed to know this. He didn't testify that this update was vital to the cohesiveness of the gang. Kennedy But isn't that something that can reasonably be inferred if we've got Virginia saying that her husband is collecting the taxes to somebody who's a leader of the gang? That just kind of sounds like ordinary course of business update. It's certainly not defeating the purposes of the conspiracy, and it would seem to me to some degree furthering the purposes of the conspiracy. I'm just kind of updating and letting you know he's continuing to do his job. So why is that not admissible on that basis? Because this information did not affect Mr. Navarro's conduct afterwards. It didn't move the conspiracy forward in any way. It's more. But if she said the opposite, he's not collecting these taxes anymore, it may well have affected his behavior. Because once that happens, it means the conspiracy is not operating the way he wants it to. And so he's going to go after Gil, Juan Gil, and say, hey, wait a minute, you're not doing your job. I don't think that the record reflects that it had any material impact. It was immaterial to him. Mr. Navarro even testified he had no idea who Mr. Diaz was taxing or for how much. It was just idle chatter. It did not make him change his conduct in any way, whether he was taxing or wasn't taxing. They were talking. So where did the tax money go? According to Navarro, it went to Virginia Gil's husband. Once collected, where did it go? Well, according to David Navarro, money that was collected was then used to buy and distribute drugs. Wasn't Navarro the one who was in charge of the entire extortion part of this gang operation? Yes. Was this directly related to the taxes? So, I mean, he would be, that's part of what his job seemed to be, was to ensure that the taxes were, the extortion operation was proceeding. Well, I think it's important to note that this hearsay testimony came in sometime in 2009. Mr. Navarro became the president of the gang sometime in 2009 as well. We don't know if this had any material impact on what his duties were at that time. What we do know is he didn't do anything with the information. And the way that I look at whether or not it's moving the ball forward is it must have some sort of impact on someone's future action. They must make a decision based on that information that leads them to further the conspiracy in some way. And we don't have that here. I think, too, you know, if you take a look at the methamphetamine hearsay, for example, Navarro testified that he had heard from some unknown party that Rivera had been arrested with a large quantity of meth, namely a half pound of methamphetamine. Again, here the government moved to bring this in as a co-conspirator statement as well. The government at least concedes error on this. So, and if we take a look also at the roll call hearsay, I think there's an even stronger argument, because while the roll call hearsay was discovered in the jail cell of Vega, the statements in the roll call were never – when the statements in the roll call were made was never established. We do know it was discovered in 2012, two years after Mr. Diaz had been arrested. But we don't have any idea when those statements were created. The declarant, Mr. Vega, did not testify about this. Why does it matter when they were created? We need to know when it was created to know whether or not it was a statement made. A list can be created at one point and maintained and used long afterwards. So if the list is maintained, you know, somebody writes a list and then you're still checking it two years later, it doesn't matter when it was created. The fact that it's still being consulted and used makes it current as of then. Every time somebody reads the list, this is going back to my evidence class 40 years ago, but I think every time somebody consults a list reader, that's a statement in itself, isn't it? It's an adoption of the list, which becomes – so if this list is in jail, right, and it's being used to check membership. But we don't know what it was being used for. It wasn't – But that's why we have juries. They infer that you don't sort of keep lists in jail, keep sort of long lists of names in jail, just sort of idly, you know, zadoodle, that, you know, they are told this, they believe it or not. But if they believe it, the way they would view the list is this is an active list that's being consulted to figure out who is in the gang, right? But we don't know when that – it has to be a conspiracy to which Mr. Diaz belonged. And – At some point. Right. At some point the conspiracy ends. Mr. Diaz was in custody at the time on this case at the time when that hearsay roll call sheet was found. We don't know when that was created. We don't know why that was created. No one from the conspiracy actually verified that it was indeed a list of members of the conspiracy. The declarant didn't testify that way. The declarant didn't testify at all. We have this document that has something on it, and nobody from the conspiracy says exactly what this is. And it is important, because the government's justification is that the roll sheets are – It would be better if gangs kept better records, you know. I mean, that's the problem. I mean, the government is up in a – is up trying to prove this thing that is tying – this organism is tying not to be found out. So they use code words. They use lists. It would be very nice if they say, you know, this is the current list of gang membership as of this date, and then sign, and they got it notarized. That would be better. But they tend not to do that. For understandable reasons. Of course. But the government did have a witness that might have been able to at least say, this is a roll call list. They had Mr. Navarro. It wasn't as if they presented that list to Mr. Navarro to ask him, is this a roll call list? Is this what you folks do? Is this how you keep track of your membership? But the government's justification for that roll call sheet is that it was made to induce enlistment. Nobody testified that way. They also stated that the roll call sheet – the reason it was a statement in the furtherance of a conspiracy is because it was a statement of strength in numbers. Nobody testified that way about the roll call sheet. The government used that roll call sheet in closing argument to make the argument that you just made, that it was a directory of the members of the gang. But that wasn't the reason why the co-conspirator statement was entered. They didn't provide a reason why this was in the furtherance of a conspiracy at trial. So in the end, we have a number of statements that were entered as co-conspirator statements without the requirement met that it was made in the furtherance of the conspiracy. The justification that we have for the in the furtherance requirement now comes on appeal. It didn't come before the district court. And these after-the-fact justifications don't jive with the testimony that was actually given at trial. And this Court requires strict compliance with the in the furtherance of the conspiracy standard. Okay. I think we understand your position on this. Okay. Do you wish to reserve or do you wish to argue another point? I would like to argue one more point on this issue, if I may, regarding Bibero. There is some question about the standard of prejudice. And we maintain that Bibero is still viable post Crawford and Davis per Miller v. Gami because this Court cannot overturn prior precedent unless the precedent is clearly irreconcilable with higher authority. And I don't think that we can say that the Bibero standard is clearly irreconcilable on this point because this Court recently used this standard in U.S. v. Ryder, which is an unpublished case, but it's from June 6, 2013, nine years after Crawford. So the government also argues that the admission of hearsay just no longer creates a constitutional issue. And the admission of hearsay does sometimes create a constitutional issue, which was the subject of a 28-J letter that I sent citing U.S. v. Jackson. And I would like to make a couple of points about the expert opinion, if I may. At trial, Mr. Navarro was permitted to offer his opinion on a variety of important subjects, that larger amounts of drugs would be foreseeable to other members of the gang. Mr. Navarro was asked to answer hypothetical questions, and he was asked what a distribution amount of drugs was. Finally, the government used Navarro to decode gang speak and draw conclusions about other people, what other people were talking about. This is all specialized knowledge per this Court's decision in Figueroa and Lopez, which makes clear that lay testimony results from a process of reasoning familiar in everyday life. Like Figueroa and Lopez, I think the government has blurred the lines between 701 and 702. So I'd like to reserve on that. Thank you. Thank you. We'll hear from the government. Good morning. Michael Dorr on behalf of the United States. Beginning with the expert opinion argument that we just heard, Mr. Navarro was a member of the Black Angels gang or one of its three sub-tiers for almost 20 years, dating back to when he was 14 years old. He testified at length about his experience in the gang, his experience extorting drug dealers of drug proceeds, his experience beating others and otherwise upholding the tenets of the gang, many of which were taught to him by Juan Diaz, himself a member of the gang for 20 years. So there was ample evidence in the record provided by Mr. Navarro that he, by virtue of his personal experience in this entity, was in a position to offer his lay opinion testimony, as he did here. With respect to the co-conspirator statement hearsay, purported hearsay that was referenced, the Yarborough case, which we cited in our response to the 28-J letter filed this week, makes clear that updating members of the conspiracy in and of itself is in furtherance of the conspiracy. So there is no indication from the case law in this circuit that someone had to do something different. Here, there was a clear update between someone who the jury heard phone calls with respect to Ms. Gill, was directly involved in this conspiracy, providing money, or rather, assisting Juan Diaz, for instance, in obtaining pieces of a firearm that Juan Gill wanted to sell. Mr. Gill referenced in a phone call to Ms. Gill that people do things for her because of him, because of his status in the gang. And for by virtue of those calls and many others, the statement here was updating Mr. Navarro, a senior member of the gang, in charge of the conspiracy. Do you have a view about Biller? I do, actually, Your Honor. With respect to the United States v. Rider, that's an unpublished case that's two paragraphs long. I don't think that that is necessarily something that the Court should rely upon as indicating its view. The Davis Supreme Court case, in our view, makes very clear as to whether or not something violates the Confrontation Clause. Obviously, it would be something that's testimonial. Here, the hearsay at issue, the only area, the only question that arguably would potentially cross over into what might be testimonial, I would submit, is the methamphetamine the statement about the methamphetamine, because it's unclear whether or not that is in a court proceeding, for instance, something that might be testimonial. All of the other hearsay is hearsay we argue it's obviously not hearsay, but that's, for example, a matter of a conversation between Mr. Barajas and Mr. Navarro before this case was ever indicted. Whether that satisfies the co-conspirator hearsay exception or not, it's in no way testimonial. So we would argue that the framework, the rubric that was established by Crawford and was clarified by the Davis case by the Supreme Court, makes clear that there is no presumptive constitutional issue when it comes to hearsay. That it is a matter of whether or not it falls in the testimonial box or doesn't. And here, the only thing that arguably could would be that one lone statement with respect to whether it was Mr. Navarro had heard there was a half pound of methamphetamine, which we submit is amply sort of outweighed by all the other evidence that was not Mr. Navarro, that he was informed that there was a large seizure of methamphetamine from Mr. Rivera, that six pounds of methamphetamine were seized from drug dealer Jose Silva, and that there were ounces on a regular basis being sold on Juan Gil's behalf during the course of the conspiracy. So even if this Court were to apply a standard of review by which Hamasera didn't apply unless there was beyond a reasonable doubt, as for one area, we believe that's the only area that could theoretically apply. And here, the government more than satisfies that standard, in our view. Okay. Thank you. Thank you, Your Honor. I just had a couple of quick points. On the harm from the admission of the hearsay, in particular the methamphetamine hearsay, the government says essentially that it's simply cumulative. Of Diaz's other, his sales with his girlfriend and the six-pound seizure via Santa Cruz Silva. But it argued that the half-pound meth deal in its closing argument, and I noticed when I was reviewing the government's answering brief, it claims that the jury's verdict could not have been predicated alone on Diaz's sales with his girlfriend, because the jury made a finding that he conspired to distribute more than 500 grams. So the jury must have bootstrapped some amount together in order to come to that finding. So it impacted the verdict in this case. And that's at the government's answering brief on page 82. The other point that the government made is that the U.S. v. Ryder case is an unpublished case. And I'd just like to point out that sometimes published cases have truncated legal analyses. But the basic points of law, the law upon which the panel depends to render a decision, reflects what that three-judge panel believed the state of the law to be. So with that, I submit. Thank you. The case has been submitted. We'll next hear argument in the United States versus review.
judges: Kozinski, Wardlaw, Fletcher